REID, Judge.
Plaintiff, Octavia Smith acting as cura-trix for the interdict, Ella Perryman Roberts, brought this suit to nullify and set aside a transfer of real estate executed by Ella Perryman Roberts to Otis L. Campbell, dated January 28, 1963 passed before Gus A. Fritchie, Jr., Notary Public and recorded in the records of St. Tammany Parish.
This sale is attacked on the following three grounds to-wit:
1. The mental and physical incapacity and incompetence of Ella Perryman Roberts, vendor.
2. For lesion beyond moiety.
3. For mistake and error induced by fraud and misrepresentation.
Defendants filed an answer denying in the main the allegations of plaintiff’s petition and further alleging that in addition to the consideration for the transfer of the property which was the assumption by the vendee Campbell of the balance due on a mortgage in favor of The Slidell Savings and Homestead Association recorded in M. O.B. ISO folio 628 with a present balance of $2749.26 was the cancellation of certain small debts due to William V. Campbell and Ella Perryman Roberts was given the right to live on the property for the remainder of her life, free ambulance service should she need it without charge, and a free burial. The free burial is not in the answer but it is in the evidence. Defendants further answered saying that at the time of the sale Ella Perryman Roberts was in full possession of all her faculties, mentally and physically, able to do and perform the transfer of property to defendant Otis L. Campbell.
The case was duly tried and the Lower Court with written reasons for judgment decided in favor of the defendant, rejecting plaintiff’s demands. From this judgment plaintiff has brought this appeal.
ON MOTION TO-DISMISS APPEAL:
Subsequent to the lodging of the appeal in this Court, the defendant and appellees filed a motion to dismiss the appeal on the following ground:
“The Court is without jurisdiction as shown by the record herein, for:
(a) Appellant litigates herein by forma pauperis.
(b) Appellant filed in the lower court a motion for a suspensive-appeal but did not furnish security for a suspensive appeal as required by Article 5185 Louisiana Code of Civil Procedure.
(c) Appellant did not move for or obtain an order for a devolutive appeal and the expiration of the delay for applying for a new trial (90 days as provided in Article 2087 of Louisiana Code of Civil Procedure) has expired.”
*664 This motion to dismiss the appeal will he taken up and discussed before we get to the merits of the case. The record shows that the judgment in this matter was read and signed on July IS, 1966. The appellant asked for an order of appeal and the Court on the same date, July 15, 1966, granted an order of suspensive appeal with no bond required as this was a suit filed in forma pauperis, which appeal was returnable on September 9, 1966 to this Court.
The record shows that the appeal was lodged in this Court on August 4,1966. The motion to dismiss the appeal was filed on December 22, 1966.
 While it is true that the minute entry and the notice show that a suspensive appeal was granted, a suspensive appeal cannot be granted in a suit filed in forma pau-peris. We believe that this is an error which may or may not be imputable to the appellant, but that the same should be treated as a devolutive appeal which was timely lodged in this Court.
Article 2161 of the Revised Code of Civil Procedure reads as follows:
“An appeal shall not be dismissed because of any irregularity, error, or defect unless it is imputable to the appellant. Except as provided in Article 2162, a motion to dismiss an appeal because of any irregularity, error, or defect which is imputable to the appellant must be filed within three days, exclusive of holidays, of the return day or the date on which the record on appeal is lodged in the appellate court, whichever is later.”
Since the motion to dismiss the appeal was filed on December 22, 1966, or more than four months after the appeal was lodged with this Court the motion to dismiss the appeal was filed too late.
The appellee relies on Articles 2162 and 2163 of the Code of Civil Procedure. We do not believe these Articles are applicable to the case at Bar. Article 2162 deals with the power of the Appellate Court to dismiss an appeal for lack of jurisdiction, or where there is no right to appeal, or if the appeal has been abandoned. There is no question but what the appellant had the right to appeal, and that the jurisdiction of the appeal would be in this Court, and the appeal has not been abandoned. This Court if it had no jurisdiction, could transfer the appeal to the proper court.
Article 2163 of the Code of Civil Procedure relates to a peremptory exception which could be filed for the first time in the Appellate .Court giving the Appellate Court the power to consider the exception. We do not feel that either one of these Articles is applicable to this case.
For these reasons it is ordered that the motion to dismiss the appeal be overruled.
ON THE MERITS:
The facts show that Ella Perryman Roberts was a negro of little education, eighty years of age, totally blind in one eye and with impaired vision in the other. Her husband, Robert Smith Roberts, died intestate survived by neither ascendants nor descendants on January 22, 1963, and his said wife by virtue of his death became sole owner of all the property acquired during the marriage, particularly the property described in the petition which is located in Slidell, Louisiana.
Ella Perryman Roberts was adjudged an interdict on April 5, 1963, the petition for interdiction having been filed on February 23, 1963. Subsequent to that plaintiff, Octavia Smith, qualified as curatrix after the legal delays had expired.
Plaintiff appellant sets forth in brief the following specifications of error, to-wit:
1. The Court erred in finding that plaintiff was mentally competent and able to transact business when she signed the act of sale.
2. The Court erred in finding that the doctor who testified in the case “was un *665 able to communicate with this old negro woman” which finding is in no way supported by the evidence.
3. The Court erred in finding that the Notary who passed the act of sale knew the condition of plaintiffs mind and was in a position to detect any disability.
4. The Court erred in finding that there was no lesion in the transaction
5. The Court erred in not finding error on the part of the seller.
6. The Court erred in finding that the purchaser was not aware of the seller’s mental incompetence.
7. The judgment is contrary to the law and the evidence.
The Trial Judge in his written reasons for judgment set out the following facts, towit:
“The facts seem to be that the husband died and the wife had no means of paying off the mortgage to the Homestead Association, that they lived next door to the defendant, that the widow made her situation known to the defendant, that they reached an agreement that the defendant would take title to the property, that the vendor would remain in the property for the remainder of her life and that the defendant would furnish necessary ambulance service in the event of her disability and provide burial for her. The vendor was permitted to select her own Notary for the purpose of making the transaction and the parties appeared at the office of Mr. Gus A. Fritchie Jr., Notary Public, the vendor in this instance being a long time family employee of the Fritchie family. She apparently had great confidence in Mr. Fritchie. The transaction was fully discussed with Mr. Fritchie and if there had been any indication of any disability on the part of this widow and vendor, Mr. Fritchie would have detected it. It is apparent that he was in communication with her and that she did discuss her problems with Mr. Fritchie. This, the Court does not believe is the case with the doctor who testified in this case. The Court feels that the doctor was unable to communicate with this old negro woman and that he formed conclusions which Mr. Fritchie, under no circumstances, was able to arrive at. Fritchie was satisfied that she knew what she was doing and he testified that she indicated that she was under the impression that relatives were trying to use her, that she wanted to deal with Mr. Campbell, that the matter of the ambulance service, the Undertaker services and all was fully discussed with Mr. Fritchie and Fritchie, the Notary Public, suggested that perhaps they would want to put that in the deed. Mr. Campbell said that would only cloud the title but that was his understanding and he would comply with it.”
Plaintiff in support of the allegations that Ella Perryman Roberts was non compos mentis and mentally and physically incompetent and incapacitated to convey property offered three witnesses namely, herself Octavia Smith, Dr. Richard Howard and Stella Belle Rufus.
'Octavia Smith and Stella Belle Rufus were the closest relatives of Ella Perryman Roberts and in the event the sale was annulled they would be the ones who would profit by it.
Dr. Richard Howard was a general practitioner not a psychiatrist and he testified that he had treated Ella Perryman Roberts for many years and that she had had hypertensive heart arteriosclerotic vascular disease. She actually had hardening of the arteries to inhibit circulation through the main artery from the heart and actually, would be classified as senile dementia, secondary to arteriosclerosis, cerebral and generalized. She, before this time, had these same symptoms and was being treated for her hypertension. He also testified that there is very little that can be done aboitt the mental insufficiency associated with this particular disease once it has occurred.
*666 The Judge in his written reasons saw fit to disregard Dr. Howard’s testimony. Since he knew these parties and heard them testify, he was in a better position to pass on the credibility of their testimony, and we have not been shown that he abused his discretion or was manifestly erroneous. The defendant in opposition offered the testimony of Mr. Fritchie, the Notary, William Campbell, Otis Campbell and Mrs. William Campbell, wife of William Campbell and mother of Otis Campbell. The Campbell family testified that in spite of her age that Ella Perryman Roberts knew what she was doing and was able to transact her business, and that her objective was to have someone to take up her obligation to the Homestead Association and to keep her relatives from coming in and depriving her of the property.
Mr. Fritchie, the Notary testified that the interdict had been a servant in their family for many years and that she appeared all right to him. She selected him as the Notary and when she came into the office she immediately started talking to him and inquiring about various members of the Fritchie family. Mr. Fritchie could not detect during the short time she was in the office signing the deed and having it explained to her any sign of senility. Under this evidence we believe that the finding of fact by the Trial Judge is correct.
With reference to the second grounds for nullity of the deed, namely, lesion beyond moiety, the plaintiff offered the inventory in the interdiction proceedings, which inventory was signed by two competent appraisers. However, these appraisers did not take the Witness Stand, did not testify how they arrived at their valuation and were not subjected to cross examination.
Defendant placed on the Stand Raymond C. McIntosh and Marshall Thompson, two real estate men who valued the property at $2865.00 rounded out to $2900.00 and $2960.00 respectively.
Mr. McIntosh testified that the property adjoined the East line of the property-known as Campbell’s Funeral Home. The improvements were a five room single family frame residence, two bedrooms, kitchen, bath, living room, all measuring 24 x 32 feet. He based his appraisal on a reproduction cost 752 square feet at $5.00 per foot, 40' square feet at $2.00 per foot, making a total of $3840.00 for the improvements. He took 40% age depreciation on the amount of $1500.00 which brought it down to $2340.00.. They had curable depreciation of roof $50. ~ 00, termite damage and painting work $200.-00, interior painting and repair $100.00 and miscellaneous repairs $75.00 amounting to^ $425.00, which together with the depreciation on the plumbing $50.00 made a total of $475.00, leaving an estimated market value of $1865.00. He valued the lot at $1000.-00 arriving at the final figure of $2865.00 rounded off at $2900.00.
Mr. Thompson in his appraisal testified that the property is known as residential although it adjoins commercial property. The entire neighborhood is a negro section. He further stated that if the property were in good condition he would place a value of $4760.00 on the house and lot. However, with the amount of repairs that were needed i. e., new roof, painting inside and out, jacking up with new footing under the center piers, replacing porch and steps, repairing termite damage, new screens, he appraised the property in its present condition on to-days market at $2960.00.
The appraisal in the inventory was $5552.00 for the real estate.
The Trial Judge admitted the inventory and appraisal over the objection of defendants but subject to their objection. In view of this objection and the contest over the value we believe the Lower Court erred in admitting it. However, he seems to have ignored the appraisal in passing on this point.
The third specification of error set out in plaintiff’s petition is for mistake and error induced by fraud and misrepresentation.
*667 Plaintiff appellant urges that the amount •of the assumption of the mortgage as of the •date of the sale was less than half of the value of the property established by the inventory and evidence. However, it was in excess of one half the value of the property as shown by the evidence of the two expert appraisers put on by the defendant.
Plaintiff appellant further urges that the defendants attempted to show additional consideration in the form of unwritten promises to permit Ella to reside in the house, take care of her during her lifetime and to give her a funeral upon her death. The Notary did ask about putting those in the deed but at the request of the purchasers these promises were not mentioned in the act of sale. However, the vendor had the entire matter explained to her and seemed satisfied and we do not see how now she can come in and complain of it.
Civil Code Article 402 which is the law of this case reads as follows, to-wit:
“No act anterior to the petition of the interdiction shall be annulled, except where it shall be proved that the cause of such interdiction notoriously existed at the time when the acts, the validity of which is contested, were made or done, •or that the party who contracted, with the interdicted person, could not have been -deceived as to the situation of his mind.
‘Notoriously’ in this article, means that ■the cause of interdiction was generally Toiown by the persons who saw and conversed with the party.”
There is no question that this is the law, and the only issue here is whether the facts adduced in the trial of this case, is :in the purview of this Article. It is regrettable that the only witnesses outside the doctor were two interested parties on the part of the plaintiff- and three interested parties on the part of the defendant. In fact, the defendants themselves and the wife of one and mother of the other.
We might quote Article Civil Code 1788 subparagraphs 2 and 3 which provides as follows:
“2. As to contracts, made prior to the application for the interdiction, they can only be invalidated by proving the incapacity to have existed at the time the contracts were made.
3. But in order to prevent imposition, it is not enough to make the proof mentioned in the last rule; it must also, in that case, be shown that the person interdicted was known by those who generally saw and conversed with him, to be in a state of mental derangement, or that the person who contracted with him, from that or other circumstances, was acquainted with his incapacity.”
It is regrettable that neither side sought to bring in outside evidence as to whether the interdict was mentally and physically incapacitated to such an extent that she was generally known as such in the community, and incompetent to transact her business and to realize what she was doing.
Appellant cites numerous Articles of the Code and several decisions in support of their contention. We have no quarrel with these rulings but do not feel that it is appropriate to the facts in this case.
For the foregoing reasons we do not feel that the Trial Judge was manifestly erroneous and the judgment of the Lower Court is therefore affirmed.
Affirmed.